```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JODI LEIGH SECOR,

                                Plaintiff,                        18-CV-6092 (SN)

                -against-                                         OPINION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
-----------------------------------------------------------------X
```

**SARAH NETBURN, United States Magistrate Judge.**

Plaintiff Jodi Leigh Secor brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final determination of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). The Commissioner moved for judgment on the pleadings affirming the Commissioner's decision and dismissing the case. Plaintiff cross-moved for judgment on the pleadings reversing the Commissioner's decision and remanding the case to the Social Security Administration. The parties have consented to my jurisdiction.

The Court finds that the administrative law judge made no legal errors, and that his assessed residual functional capacity was supported by substantial evidence. Thus, he did not err in finding that Plaintiff could perform work available in the national economy. Defendant's motion is accordingly GRANTED and Plaintiff's motion is DENIED.

# BACKGROUND

## I.     Medical History

According to the parties' briefing, there are no disputes over Plaintiff's medical history. See Def.'s Memo. at 2-16 (ECF No. 19); Pl.'s Memo. at 1 (ECF No. 22).[1] The Court accordingly adopts the parties' description of Plaintiff's medical history and will only refer to the evidence in the record directly relevant to the current motions.

## II.    Procedural History

On September 13, 2007, Plaintiff slipped on spilled coffee and fell while working at an Outback Steakhouse, injuring her back and left knee. Tr. 27. After being taken to the hospital, a CT scan found a pituitary tumor. Tr. 35. She underwent surgery to remove the tumor on October 24, 2007, Tr. 239, and she underwent spinal surgery to treat her back on August 12, 2008, Tr. 344. Plaintiff has been out of work since she fell in 2007. Tr. 26, 453.

Plaintiff filed an application for disability insurance on October 9, 2008, alleging that she was disabled beginning September 13, 2007, due to back, neck, and knee pain, dizziness, headaches, and brain surgery. Tr. 82, 209-10. This application was denied initially on February 24, 2009. Tr. 85-88. Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on January 24, 2011, ALJ Roberto Lebron held a hearing. Tr. 19, 20, 95, see Tr. 21-81. The ALJ issued a decision on April 4, 2011, finding that Plaintiff was not disabled under the Act. Tr. 9-14. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 6, 2012. Tr. 1-3. The ALJ's April 4, 2011 decision thus became the final decision of

---

[1] In her memorandum, Plaintiff points out that Dr. Seok never examined her. See Pl.'s Mem. at 1. That is consistent with Defendants' memorandum, which notes that Dr. Seok was a state agency medical consultant who reviewed Plaintiff's record. See Def.'s Mem. at 12 ("[Dr. Seok] reviewed the evidence of record and completed a Physical Residual Functional Capacity Assessment."). That is confirmed by the record. See Tr. 349-54. There is, therefore, no dispute over whether Dr. Seok ever examined Plaintiff.

the Commissioner, which plaintiff appealed. See Compl., Secor v. Commissioner of Social Security, No. 12-CV-7355 (PAE) (Oct. 1, 2012) (ECF No. 1).

On March 12, 2013, pursuant to a Joint Stipulation of Remand, the Honorable Paul A. Engelmayer ordered the matter remanded to the Commissioner for further proceedings. Tr. 511-14. The Appeals Council issued an Order of Remand, effectuating Judge Engelmayer's Order, on May 30, 2013. Tr. 517-18. Plaintiff then appeared at a supplemental hearing before ALJ Lebron on August 26, 2013. See Tr. 474-509. On July 1, 2014, ALJ Lebron issued his decision on remand finding that Plaintiff was not disabled under the Act. Tr. 523-34. The Appeals Council granted Plaintiff's request for review, and on November 3, 2015, remanded the case back to a new ALJ. Tr. 540-43. The Appeals Council instructed the new ALJ to consider the testimony of the medical expert, Dr. Spindell, who testified at the first hearing, and to obtain testimony from a vocational expert ("VE"). Tr. 542-43.

On December 8, 2016, Plaintiff appeared before ALJ Kieran McCormack. See Tr. 447-71. During the hearing, the ALJ heard testimony from Plaintiff and from a VE. Tr. 445. The ALJ asked the VE whether someone with Plaintiff's background could perform work available in the national economy given four hypothetical residual functional capacities ("RFCs"). Tr. 463-468.

ALJ McCormack issued a decision on January 5, 2017. Tr. 426-38. At step one of the sequential analysis, he determined that plaintiff had not engaged in substantial gainful activity from her alleged onset date of September 13, 2007, through her date last insured, December 31, 2012. Tr. 428. At step two, the ALJ determined that plaintiff had the severe impairments of: degenerative disc disease of the thoracic spine; status post fusion surgery in August 2008; lumbar disc bulge and discogenic disease; cervical disc herniation and bulges; and an affective disorder. Tr. 428-29. The ALJ also found that Plaintiff's impairments of a benign pituitary tumor, left knee

3

contusion, opioid dependence, drug and alcohol abuse, headaches, carpal tunnel syndrome, thrombosis, and lung scarring were non-severe impairments. Tr. 429. At the third step, the ALJ determined that Plaintiff's impairments did not meet or equal the criteria of an impairment identified in the Commissioner's Listings of Impairments. Tr. 429-31. Before the fourth step, the ALJ assessed Plaintiff's RFC:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant was unable to climb. She could bend and squat on an occasional basis. She could not work at jobs containing any exposure to wetness, humidity and/or extreme cold. She could only work at low stress jobs, defined as jobs containing no more than simple, routine and repetitive tasks, involving only simple work related decisions with few, if any, workplace changes.

Tr. 431. Given her RFC, the ALJ found at step four that Plaintiff could not perform her past relevant work as a waitress. Tr. 436. Finally, at the fifth step, the ALJ relied on the VE's testimony to find that plaintiff was able to perform the jobs of cashier, fast food worker, and cafeteria attendant, and that these jobs existed in significant numbers in the national economy. Tr. 437, 464. Thus, the ALJ found plaintiff not disabled under the Act. Tr. 438.

This decision became the final decision of the Commissioner on June 26, 2018, when the Appeals Council denied Plaintiff's request for review in a written decision. See Tr. 413-21. Plaintiff appealed by initiating this action on July 5, 2018. See ECF No. 1.

**APPLICABLE LAW**

I.      **Definition of Disability**

A claimant is disabled under the Social Security Act if she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A),

4

1382c(a)(3)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. §§ 423(d)(3), 1382c(a)(3)(D). A claimant will be determined to be disabled only if the "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Administration has established a five-step sequential evaluation process for making disability determinations. See 20 C.F.R. §§ 404.1520, 416.920. The steps are followed in order: if it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not progress to the next step. The Court of Appeals has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183–84 (2d Cir. 2003) (quoting Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999)). The "claimant bears the burden of proof in the first four steps of the sequential inquiry; the Commissioner bears the burden in the last." Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013).

**II.     Standard of Review**

A motion for judgment on the pleadings should be granted if it is clear from the pleadings that "the moving party is entitled to judgment as a matter of law." Burns Int'l Sec. Servs., Inc. v. Int'l Union, 47 F.3d 14, 16 (2d Cir. 1995). The court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court may set aside the Commissioner's decision only if "it is based upon legal error or is not supported by substantial evidence." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

**DISCUSSION**

The ALJ found that Plaintiff had the physical RFC to perform light work, with the exception that she could only bend and squat on an occasional basis and could not climb. Tr. 431. The ALJ additionally found that Plaintiff could not work at jobs that exposed her to "wetness, humidity and/or extreme cold." Id. As for her mental RFC, the ALJ found that Plaintiff could only "work at low stress, jobs, defined as jobs containing no more than simple, routine and repetitive tasks, involving only simple work related decisions with few, if any, workplaces changes." Id. Based on the testimony of the VE, the ALJ then found that this RFC allowed Plaintiff to work as a cashier, a fast food worker, and as a café attendant, and that these positions were available in significant numbers in the national economy. Tr. 437; see also Tr. 464 (VE

6

testimony to that effect). The ALJ accordingly found that Plaintiff was not disabled under the Act.

Plaintiff argues that the exertional and mental RFCs warrant remand. The record demonstrates, however, that the ALJ's assessed physical and mental RFCs were supported by substantial evidence and were free of legal error.

**I.     Physical RFC**

Regulations divide a person's physical RFC into five exertional categories: sedentary, light, medium, heavy, and very heavy. See 20 C.F.R. § 404.1567. They define each category according to a person's maximum capacity to walk, sit, stand, and manipulate weight. See id. To have a light exertional RFC, a claimant must be capable of "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The claimant also must be capable of standing or walking for six hours in a workday. See SSR 83-10, 1983 WL 31251.

In reaching his decision that Plaintiff could perform light work, the ALJ weighed conflicting evidence, assigning little weight to the opinions of Plaintiff's treating physicians—Dr. Appel, Dr. Dunkelman, and Dr. Vora—as well as her subjective symptoms. Tr. 432-34. On the other hand, the ALJ assigned significant weight to the opinions of a medical expert and some weight to the opinion of a state agency consultant. Tr. 434. Plaintiff argues that the ALJ's weighing of this evidence was legal error. See Pl.'s Mem. at 4-8. The Court disagrees. Substantial evidence in the record supported an assessment of a light exertional RFC, the ALJ properly applied the treating physician rule, and the ALJ appropriately weighed Plaintiff's subjective symptoms. Thus, the assessment of a light exertional RFC does not warrant remand.

7

### A. Substantial Evidence Supporting Light Exertional RFC

In assessing a light exertional RFC, the ALJ primarily relied on the opinions of Dr. Spindell, a medical expert who testified at the first hearing, and Dr. Seok, a state agency consultant. Plaintiff argues that it was legal error to rely on the opinions of these physicians because they never examined Plaintiff. See Pl.'s Mem. at 6-7. That argument is unavailing.

Dr. Seok's report and Dr. Spindell's testimony both supported the conclusion that Plaintiff could perform light work. In his report, which was based on a review of Plaintiff's medical records, Dr. Seok concluded that Plaintiff could sit and stand for a total of 6 hours in a workday, that she could frequently lift and carry 10 pounds, and that she could occasionally lift and carry 20 pounds. See Tr. 350. Dr. Spindell, who also reviewed Plaintiff's records and Dr. Seok's report, agreed with that assessment. Tr. 56-57 (testifying that Plaintiff could sit or stand for six hours, occasionally lift 10 pounds, and frequently lift 20 pounds). Those function-by-function assessments fit with a light exertional RFC. See 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251.

Nevertheless, Plaintiff argues that it was legal error to rely on these experts because they never examined her. Under the applicable regulations, however, "the opinion of a non-examining medical expert . . . may be considered substantial evidence if consistent with the record as a whole." Ortiz v. Comm'r of Soc. Sec., 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018) (collecting cases finding same); see also Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993) (noting that the regulations "permit the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record"). Here, the opinions of Dr. Seok and Dr. Spindell were consistent with the other evidence in the record. A consultative examiner, Dr. Fernando, examined Plaintiff in December 2008 and found no evidence of any significant

physical limitations other than the postural limitations reflected in the ALJ's assessed RFC. See Tr. 271-274. Indeed, Dr. Fernando found that Plaintiff had 5/5 strength in her hands, upper extremities, and lower extremities, Tr. 272-73, which was consistent with findings from her treating physician, Dr. Appel, throughout 2007 and 2008. See Tr. 269 (progress notes from October 16, 2007 visit with Dr. Appel, noting 5/5 muscle strength); Tr. 267 (progress notes from November 16, 2007 visit noting same); Tr. 265 (progress notes from December 19, 2007 visit noting same); Tr. 263 (progress notes from January 18, 2008 visit noting same); Tr. 261 (progress notes from February 26, 2008 visit noting same); Tr. 255 (progress notes from August 5, 2008 visit noting same); Tr. 253 (progress notes from September 22, 2008 visit noting same). Thus, abundant medical evidence supported the conclusions of the non-examining sources, and the ALJ properly concluded that substantial evidence supported a light exertional RFC. See Reithel v. Comm'r of Soc. Sec., 330 F. Supp. 3d 904, 911 (W.D.N.Y. 2018) (finding that progress notes of "5/5" strength supported finding that claimant was capable of light exertional work); Leung v. Berryhill, No. 17-CV-2703 (LTS), 2017 WL 5953169, at *23 (S.D.N.Y. Nov. 30, 2017), adopted by, 2018 WL 557898 (Jan. 22, 2018) (finding same).[2]

**B. Treating Physician Rule**

Under the Social Security Administration's treating physician rule, "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" is given "controlling weight" if the opinion is "well supported by medically acceptable clinical and

---

[2] Plaintiff also argues that Dr. Spindell was not qualified to speak to the full scope of her neurological, orthopedic, and psychiatric limitations. See Pl.'s Mem. at 6. This argument is misplaced. Dr. Spindell is an orthopedic surgeon with over thirty years of experience. See Tr. 130-140. He was, therefore, qualified to speak to the limitations caused by Plaintiff's back injury. He also appropriately limited his opinion to that area of expertise during the hearing. See Tr. 55 ("I'm not going to comment on the psychiatric aspects of this . . . so I'm sticking strictly to the orthopedic aspects, and there is sufficient evidence here to speak . . . to that.").

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) (summary order) (quoting 20 C.F.R. § 404.1527(d)(2)).[3] If the ALJ does not give controlling weight to a treating source's opinion, "the ALJ must provide 'good reasons' for the weight given to that opinion or face remand." Urena v. Comm'r of Soc. Sec., 379 F. Supp. 3d 271, 280 (S.D.N.Y. 2019) (citation omitted). When assessing how much weight to give the treating source's opinion, the ALJ should consider factors set forth in the regulations, which are: (i) the length of the treatment relationship and the frequency of the examination; (ii) the nature and extent of the treatment relationship; (iii) the supportability of the opinion with relevant evidence, particularly medical signs and laboratory findings; (iv) the consistency of the opinion with the record as a whole; (v) whether the opinion is from a specialist; and (vi) other relevant factors. See 20 C.F.R. § 404.1527(c)(2)-(6).

In assessing Plaintiff's exertional RFC, the ALJ considered and assigned little weight to the opinions of three of Plaintiff's treating physicians: Dr. Vora, Dr. Appel, and Dr. Dunkelman. Tr. 432-33. Plaintiff argues that the ALJ, in doing so, failed to follow the treating physician rule. Pl.'s Mem. at 4-6. A review of the record, however, shows that the ALJ properly assessed each physician's opinions according to the factors set forth in the rule.

---

[3] On March 27, 2017, the Social Security Administration revised its regulations to remove the treating physician rule. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Under the new rules, ALJs must "weigh all medical evaluations, regardless of their sources, on the basis of how well supported they are and their consistency with the remainder of the record." Distefano v. Berryhill, 363 F. Supp. 3d 453, 463 n.4 (S.D.N.Y. 2019) (citation omitted). Because Plaintiff filed her claim before the new rule's effective date of March 27, 2017, Plaintiff's claim is evaluated under the old treating physician rule. See 20 C.F.R. § 404.1527 (providing that the Social Security Administrating will give "controlling weight" to opinions of treating physicians that are well-supported for claims filed prior to March 27, 2017).

First, the ALJ properly accorded "little weight" to the opinion of Dr. Vora. Tr. 435. Dr. Vora, who treated Plaintiff after her date last insured, completed a medical source statement form on November 7, 2016. See Tr. 1033. In that form, Dr. Vora opined that that Plaintiff: (1) could only occasionally lift up to 10 pounds; (2) could only occasionally carry up to 20 pounds; (3) could only sit for 45 minutes at a time, up to 4 hours in a day; (4) could only stand for 1 hour at a time, up to 2 hours in a day; and (5) could only walk for 30-40 minutes at a time, up to 1 hour in a day. Tr. 1029. This opinion is admittedly inconsistent with a light exertional RFC. See 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251. But the ALJ did not err by assigning it little weight. The opinion came almost four years after Plaintiff's date last insured. See Tr. 1033. And while retrospective opinions may support a disability claim, they also must bear on the relevant period of disability. See Dailey v. Barnhart, 277 F. Supp. 2d 226, 233 n.14 (W.D.N.Y. 2003) ("Medical opinions given after the date that Dailey's insured status expired are taken into consideration if such opinions are relevant to her condition prior to that date.").[4] Here, Dr. Vora's opinion was rendered more than three years after the close of the relevant period, and his opinion does not refer to any date within the relevant period. See Tr. 1028-33. Indeed, Dr. Vora specifically noted that it was "unknown to [him]" how long Plaintiff's limitations had been present. Tr. 1033. His opinion, therefore, was of limited value in assessing Plaintiff's RFC from

---

[4] In fact, Dr. Vora's opinion is not entitled to controlling weight under the treating physician rule because he did not treat Plaintiff during the relevant period. See Monette v. Astrue, 269 F. App'x 109, 112 (2d Cir. 2008) (summary order) (citation omitted); see also Arnone v. Bowen, 882 F.2d 34, 41 (2d Cir. 1989) (finding that where the claimant's claim depended on showing continuous disability from 1977-1980, a doctor who treated him several times in 1974 and 1975, and once in 1987, was not a "treating physician" within the meaning of the rule because "there simply was no ongoing physician-treatment relationship" during the relevant period) (internal quotations and citations omitted). Instead, opinions from treating physicians offered outside of the relevant period are at most entitled to "significant weight." See Monette, 269 F. App'x at 112 (citation omitted); see also Dousewicz v. Harris, 646 F.2d 771, 774 (2d Cir.1981) (concluding that although the subsequent treating physician "did not treat the appellant during the relevant period before [the alleged onset date], his opinion is still entitled to significant weight").

11

2007 to 2012, and the ALJ's decision to give it little weight was appropriate. See Flanigan v. Colvin, 21 F. Supp. 3d 285, 303 (S.D.N.Y. 2014) (affirming ALJ's weighting of retrospective opinions offered 23 and 37 months after the date last insured).

The ALJ also correctly discounted the opinions of Dr. Appel and Dr. Dunkelman. Plaintiff saw Dr. Appel for back and knee pain from October 2007 through October 2008. See Tr. 250-269. Throughout this period, Dr. Appel reported in his progress notes that Plaintiff was totally disabled and could not return to work as a waitress. See Tr. 269 (Dr. Appel's notes from October 16, 2008 visit, reporting "Ms. Secor cannot return to work. She has a Temporary Total Disability from patient's current occupation.").[5] After Dr. Appel retired, Plaintiff went to see Dr. Dunkelman from December 2008 through at least January 2011. See Tr. 363-410. Throughout that period, Dr. Dunkelman completed dozens of forms that also indicated that Plaintiff could not work due to complete disability. See, e.g., Tr. 375 (form from May 1, 2009 visit indicating that Plaintiff was "100%" disabled and could not return to work).

Plaintiff argues that these opinions contradict the ALJ's assessment that she could perform light work, and that the ALJ should have credited them. But the ALJ's decision to assign them little weight was appropriate. First, as discussed by the ALJ, see Tr. 434, 436, these opinions were offered in the worker's compensation context, and findings of disability made by other governmental agencies have only slight relevance for disability determinations. See 20 C.F.R. § 404.1504 ("Because a decision by any other governmental agency . . . about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not

---

[5] See also Tr. 253 (reporting same after September 22, 2008 visit); Tr. 261 (reporting same after February 26, 2008 visit); Tr. 265 (reporting same after December 19, 2007 visit); Tr. 267 (reporting same after November 16, 2007 visit). Some progress notes reporting that Plaintiff was disabled appear to have been written by a nurse practitioner under Dr. Appel's supervision. See Tr. 263 (progress notes from nurse practitioner Teresa Orton reporting total disability after January 18, 2008 visit). Tr. 259 (progress notes from nurse practitioner Teresa Orton reporting same after May 19, 2008 visit).

binding on us and is not our decision about whether you are disabled or blind under our rules"). Plaintiff argues that a determination of totally disability under New York's Workers' Compensation Law is relevant to disability under the Act because it is not specific to Plaintiff's previous occupation. See Pl.'s Mem. at 8. That argument is unavailing. Different "different statutory standards for disability apply under the Social Security Act and the New York Worker's Compensation Law." Pressley v. Colvin, No. 15-CV-04245 (SN), 2016 WL 4940204, at *12 (S.D.N.Y. Sept. 16, 2016) (citing Shiver v. Apfel, 21 F. Supp. 2d 192, 197 (E.D.N.Y. 1998)). Under workers' compensation, disability is defined as "the inability of an employee, as a result of injury or sickness . . . to perform the regular duties of his employment or the duties of any other employment which his *employer* may offer him." N.Y. Workers' Compensation Law § 201(9) (emphasis added). In contrast, the Social Security Act defines disability as the "inability to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment" that is expected to last 12 months or longer. 42 U.S.C. § 423(d)(1)(A) (emphasis added). Thus, the ALJ correctly determined that the determinations under New York law were not entitled to controlling weight. See McMahon v. Colvin, No. 16-CV-1997 (VSB), 2017 WL 8948743, at *26 (S.D.N.Y. Aug. 18, 2017), adopted by, 2018 WL 1989560 (Apr. 25, 2018) ("A determination of disability made in the context of a workers' compensation claim is not binding on the SSA . . . as such a determination "involves answering different questions than those involved in social security disability cases.") (citation omitted).

Second, the opinions of the treating physicians address only whether Plaintiff could return to work as a waitress, not whether Plaintiff could perform other work requiring light exertion. See, e.g., Tr. 261, 263, 375, 401. The opinions are, therefore, entirely consistent with the ALJ's determination that Plaintiff could not work as a waitress but could nevertheless

13

perform other light work. See Tr. 436-37. Thus, even if the opinions were entitled to greater weight, the ALJ's assessment of Dr. Dunkelman and Dr. Appel's opinions was harmless error.

**C. Subjective Symptoms**

During her three hearings before an ALJ, Plaintiff testified that her ability to sit, walk, stand, and lift were significantly limited. See Tr. 36-37 (testifying during first hearing that she could only walk for up to 5 minutes and could only stand for 10 to 15 minutes); Tr. 39 (testifying that she could only lift up to 5 pounds); Tr. 493-94 (testifying during second hearing that she could only walk up to 3 minutes, could only stand for 5 minutes, and could lift only 3 pounds). These subjective symptoms are inconsistent with the capacity to perform light work. See 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251. The ALJ nevertheless found that Plaintiff could perform light work because her testimony was not consistent with the medical record. Tr. 433. Plaintiff argues that this determination was legal error. See Pl.'s Mem. at 8.

When determining a claimant's RFC, "symptoms, including pain, will be determined to diminish [a claimant's] capacity for basic work activities to the extent that . . . [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). To that end, the Commissioner has established a two-step inquiry to evaluate a claimant's subjective descriptions of pain. See 20 C.F.R. § 404.1529(c); SSR 96-7P, 1996 WL 374186. First, the ALJ must determine whether the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce" the symptoms alleged. 20 C.F.R. § 404.1529(c)(1). If the claimant does suffer from a medically determinable impairment, then the ALJ must evaluate whether the claimant's alleged symptoms are consistent with the evidence. See SSR 96-7P, 1996 WL 374186, at *2. Any statements that are not consistent with medical evidence in the record are subject to a credibility analysis. Meadors v.

14

Astrue, 370 F. App'x 179, 184 (2d Cir. 2010) (quoting Hogan v. Astrue, 491 F. Supp. 2d 347, 353 (W.D.N.Y. 2007)).

The ALJ properly assessed Plaintiff's credibility under these rules. First, he found that Plaintiff's alleged headaches, dizziness, back pain, neck pain, and knee pain were attributable to medically determinable impairments. Tr. 433. He then considered the alleged frequency and intensity of her pain before finding that her described symptoms were not consistent with the record. Tr. 433-34. Specifically, he reasoned that the clinical examination findings were "minimal," and that she had conservative treatment for neck, back, and knee pain following her August 2008 spinal surgery. Tr. 433-34, 36. That conclusion was supported by substantial evidence. Throughout the relevant period, clinical observations showed that Plaintiff's straight leg raise tests were negative, her gait was normal, and her muscle strength was normal. See Tr. Tr. 247, 253-65, 267, 269, 272-73, 369, 432, 771. The only noted limitations were a reduced range of motion in her back, which the ALJ included in his RFC determination. See Tr. Tr. 253, 267, 269, 272. There was, therefore, substantial evidence supporting the ALJ's credibility determination. See Blackwood v. Comm'r of Soc. Sec., No. 07-CV-388 (DRH), 2008 WL 2704352, at *10 (N.D.N.Y. July 2, 2008) (affirming ALJ's credibility determination because the claimant's "retained normal gait, motor strength, and sensation . . . also indicate that his symptoms were not as severe as he asserted").

Plaintiff's course of treatment further supports the ALJ's assessment of Plaintiff's alleged symptoms. Before her surgery, Dr. Appel followed conservative treatment, advising Plaintiff to come for follow-up appointments and, in the meantime, continuing her pain medication and prescribing physical therapy. See, e.g., Tr. 265 (progress notes from December 19, 2007 visit, prescribing pain medication, referring Plaintiff to physical therapy, and scheduling a follow-up

appointment).[6] There were no complications from Plaintiff's spinal surgery, see Tr. 333, 346, after which Dr. Dunkelman continued with a conservative course of treatment, see Tr. 362-412. His treatment plans primarily consisted of prescribing pain medication—which he encouraged Plaintiff to taper—and scheduling her for revaluations in a month. See, e.g., Tr. 367 (notes from January 13, 2009 visit).[7] And the record shows that Plaintiff never had any additional procedures; indeed, the only procedure Dr. Dunkelman appears to have scheduled was an additional MRI in November 2008. See Tr. 388-89. The ALJ, therefore, properly discounted Plaintiff's allegations of disability in light of the clinical findings and her course of treatment. See Bodoh v. Colvin, No. 14-CV-1004 (GTS), 2015 WL 5512442, at *5 (N.D.N.Y. Sept. 15, 2015) (citing Netter v. Astrue, 272 F. App'x 54, 56 (2d Cir.2008)) ("The ALJ properly took into consideration Plaintiff's conservative treatment as additional evidence supporting his determination.").

Thus, although Plaintiff's testimony was inconsistent with a light RFC, the ALJ's credibility determination was supported by substantial evidence. The decision is, therefore, affirmed.

---

[6] See also Tr. 251 (treatment plan of scheduling a follow up and continuing pain medication after October 16, 2007); Tr. 267 (treatment plan of physical therapy and scheduling a follow up in 1 month after November 16, 2007 visit); Tr. 263 (treatment plan of offering reassurance, referring for physical therapy, continuing pain medication, and ordering an MRI after January 18, 2008 visit); Tr. 261 (treatment plan of referring for physical therapy, continuing pain medication, and scheduling follow-up in 1 month after February 26, 2008 visit); Tr. 259 (treatment plan of offering reassurance, referring for physical therapy, continuing pain medication, and scheduling a follow-up in 6 weeks after May 19, 2008 visit); Tr. 255 (treatment plan of offering reassurance, continuing pain medication, and scheduling a follow-up appointment in 6 weeks after August 5, 2008 visit); Tr. 253 (same treatment plan after September 22, 2008 visit).

[7] See also Tr. 369 (same treatment plan after February 4, 2009 visit); Tr. 371 (same treatment plan, with the addition of continuing physical therapy, following February 27, 2009, visit). Tr. 373 (same treatment plan following March 26, 2009, visit).

**II.     Mental RFC**

The ALJ found that Plaintiff could only "work at low stress, jobs, defined as jobs containing no more than simple, routine and repetitive tasks, involving only simple work related decisions with few, if any, workplaces changes." Tr. 431. In reaching this conclusion, the ALJ assigned little weight to Plaintiff's treating physician, Dr. Lavian, as well as GAFs scores from her mental health records. Tr. 435. Plaintiff argues that this weighing was improper. See Pl.'s Mem. at 6. Plaintiff is partially correct. The ALJ properly discounted the GAF scores. The ALJ's weighing of Dr. Lavian's opinion, however, may have been improper under the treating physician rule. Nevertheless, Dr. Lavian's opinion was consistent with the assessed RFC, and so any error was harmless.

Regarding for the GAF scores, the ALJ's determination was proper. The GAF score, which stands for "global assessment of functioning," is a numeric scale "promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" Kohler v. Astrue, 546 F.3d 260, 262 n. 1 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, at 32 (4th ed. 2000)). It ranges from 0, for lowest functioning, to 100, for highest functioning. Id. The American Psychiatric Association removed GAF scores from the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM"), which prompted the Social Security Administration to caution ALJ's from relying too heavily on the metric. See Estrella v. Berryhill, 925 F.3d 90, 97 (2d Cir. 2019) (citing U.S. Soc. Sec. Admin., Office of Disability Programs, AM-13066, Global Assessment of Functioning (GAF) Evidence in Disability Adjudication (Oct. 14, 2014)). Specifically, ALJs have been instructed that "unless a clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating

17

applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis." Id. (citation and alterations omitted). Furthermore, "unless the GAF rating is well supported and consistent with other evidence in the file, it is entitled to little weight under our rules." Id. (citation and alterations omitted).

Given that guidance, the ALJ's decision to afford Plaintiff's GAF scores little weight was appropriate. Plaintiff's treatment records contain two GAF scores of 55, indicating moderate difficulty in social or occupational functioning, from November 2012. See Tr. 776, 790; see also American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000). The record, however, does not contain a detailed rationale for the scores. See Tr. 776, 790. It was, therefore, proper for the ALJ to assign them little weight. See Estrella, 925 F.3d at 97. Furthermore, even if the GAF scores were entitled to greater weight, the scores of 55 were entirely consistent with the ALJ's determination that Plaintiff could only work in a low stress environment. Thus, even if the ALJ did err in giving the GAF score little weight, that error would have been harmless.

Plaintiff is correct, however, that the ALJ improperly discounted Dr. Lavian's opinion. Dr. Lavian is her psychiatrist, whom she sees to receive treatment for depression, bipolar disorder, and anxiety. See Tr. 782, 899. On November 9, 2016, Dr. Lavian completed a functional capacity assessment form. See Tr. 894-897. In that form, Dr. Lavian opined that Plaintiff had moderate limitations in her ability to sustain concentration and persistence, the ability to understand and remember instructions, the ability to accept instructions and respond to criticism, and the ability to set realistic goals. Tr. 895-96. He indicated that Plaintiff otherwise did not have significant limitations. Id. The ALJ assigned this opinion little weight because he believed that Plaintiff saw Dr. Lavian from November 2012 through February 2013, before

18

resuming treatment in January 21, 2016. See Tr. 435. The records indicate, however, that Plaintiff saw Dr. Lavian before November 2012, possibly as early as 2009. See Tr. 34 (testimony from January 24, 2011 hearing that Plaintiff was seeing Dr. Lavian); see also Tr. 782 (intake form suggesting that Plaintiff has seen Dr. Lavian since 2009). Dr. Lavian's opinions were, therefore, entitled to controlling weight in so far as they were consistent with the other evidence in the record. See 20 C.F.R. § 404.1527(d)(2).

Thus, the ALJ's weighting of Dr. Lavian's opinion was likely improper. That error, however, was harmless. Dr. Lavian opined that Plaintiff had, at most, moderate limitations in some, but not all, mental functions. See Tr. 895-96. This was consistent with the assessed mental RFC, which limited Plaintiff to low stress jobs. See Karen R. v. Berryhill, No. 17-CV-1232 (DJS), 2019 WL 1284250, at *6 (N.D.N.Y. Mar. 20, 2019) (finding a medical source statement that indicated moderate limitations in "ability to understand and remember instructions . . . . [and] ability to interact well with supervisors, coworkers, and the public" was substantial evidence supporting an RFC limitation of low stress work). Thus, even if the ALJ had appropriately weighed Dr. Lavian's opinion, it would not have affected the conclusion that she could perform work available in the national economy. See Tr. 464 (VE's testimony that Plaintiff could work as a cashier given the restriction to "low stress work").

## CONCLUSION

The Commissioner's motion for judgment on the pleadings is GRANTED, and Plaintiff's motion for judgment on the pleadings is DENIED. The action is DISMISSED with prejudice. The Clerk of Court is respectfully requested to terminate the motions at ECF Nos. 18 and 21.

**SO ORDERED**.

DATED: September 24, 2019
New York, New York

SARAH NETBURN
United States Magistrate Judge

19